## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JANUARY 2000 SESSION



**FILED**

**February 29, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

STATE OF TENNESSEE,          )
                             )   **M1999-01311-CCA-R3-CD**
        Appellee,            )
                             )   **Davidson County**
v.                           )
                             )   **Honorable Walter Kurtz, Judge**
CHARLES R. MARSHALL, JR.,    )
                             )   **(Robbery, Attempted)**
        Appellant.           )


**FOR THE APPELLANT**:                    **FOR THE APPELLEE**:

**JEFFREY A. DEVASHER**                   **PAUL G. SUMMERS**
**C. DAWN DEANER**                        Attorney General & Reporter
1202 Stahlman Building
Nashville, Tennessee  37201               **MARK E. DAVIDSON**
                                          Assistant Attorney General
                                          425 Fifth Avenue North
                                          Nashville, Tennessee  37243


**AFFIRMED**


**L. T. LAFFERTY, SENIOR JUDGE**

# OPINION

The appellant, Charles R. Marshall, Jr., referred to herein as "the defendant," was convicted of attempted aggravated robbery by a Davidson County Jury. The trial court imposed a four (4) year sentence and placed the defendant on probation for four (4) years. On appeal as of right, the defendant presents the single issue that the evidence is insufficient to support his conviction.

After a review of the record, briefs of the parties and applicable law, we AFFIRM the trial court's judgment.

## BACKGROUND

Around 2:30 p.m. on the afternoon of February 26, 1998, Wayne Branch and his wife, Mary, and James Flynn, an employee, were in the back room of Friendly Flower Shop, Inc., 99 Bridgeway Avenue, Old Hickory, Tennessee, in Davidson County. The Branches own the flower shop. Wayne Branch testified that a man ran into the flower shop wearing a Halloween mask and then ran up to James Flynn and asked him for some money. Mr. Flynn responded that he did not have any money. Mr. Branch stated that the man then ran to his wife, Mary, pulled a gun on her, and asked her for some money. She also told the man she did not have any money. Then the man ran over to Mr. Branch, cocked the gun, pointed it at him, and said, "[G]ive me your money." Mr. Branch testified that he thought the guy was "pranking with him." On several occasions, other people had come into the store and pulled pranks on Mr. Branch. He told the man, "[W]hy don't you just pull that mask off and I'll sell you some flowers, … [a]nd … by the way, what are you doing here to start with?" The man ran out the door, followed by Mr. Branch. Mr. Branch saw the man run to the left and around behind the building. Mr. Branch got into his van and saw the man come from behind his shop and run toward some railroad tracks. Mr. Branch saw a lady driving a little red car down the street, who stopped and picked up the defendant. Mr. Branch was able to obtain the license plate number from the car and followed it to the Rio Vista Apartments. He stated that he was about twenty (20) to thirty (30) feet from where the car had stopped. He was able to see the man get out of the car without the mask. Mr. Branch recognized the man as C.J., an employee at the Lakewood Liquor Store in Old Hickory and Swifty Gas Station. In fact, Mr. Branch identified the defendant as the man in question. The defendant had waited on Mr. Branch on several occasions in these two stores. At the time of the offense, Mr. Branch testified that the defendant was wearing a green shirt or sweater. Mr. Branch returned to the flower shop and told the police what he had seen, including the license plate number. He testified that he and the police returned to the Rio Vista Apartments where the defendant was arrested.

2

Later, Mr. Branch stated that the Metro Police Department showed him a mask, which he identified as being worn by the defendant. He also identified a weapon that appeared to be a .9mm weapon, but turned out to be a pellet gun.

Officer Kenneth Elkin, Metro Police Department, testified that around 2:30 p.m. on February 26, 1998, he arrived at the Friendly Flower Shop. Elkin stated that he talked to Wayne Branch. Elkin put out a broadcast for a red Chevrolet, license plate number 397-ZNS. Elkin then followed Wayne Branch to the Rio Vista Apartments, where he arrested the defendant after he was identified by Mr. Branch.

Officer David Hedge, Metro Police Department, testified that on February 26, 1998, he was working the Hermitage area. He received a broadcast to go to the Mapco at Old Hickory Boulevard and Central Pike. Officer Hedge observed a maroon Chevrolet Corsica with car tags matching the police broadcast parked by a pay phone. A female, identified as Kimberly Roberts, was using the phone. Officer Hedge arrested Ms. Roberts. He stated that he searched the trunk of the car and found a black Daisy BB pistol.

Malcolm Crosslin, maintenance supervisor for the Rio Vista Apartments, testified that he received a phone call from a tenant. In response, Mr. Crosslin went between buildings T and U and saw a bag near some bushes. The bag contained a mask and an empty Coke can. Mr. Crosslin called the police about the bag. He identified the defendant as a tenant in the apartments.

Detective Norris Tarkington, an investigator for the Metro Police Department, testified that he went to the Rio Vista Apartments, where the defendant was in custody. Detective Tarkington had also been advised that Kimberly Roberts was in custody. Tarkington stated that the defendant was wearing a white long sleeved T-shirt with a logo on it and blue jeans, and Ms. Roberts was wearing a green shirt and blue jeans. Four (4) days later, Detective Tarkington returned to the Rio Vista Apartments, where he received the Halloween mask and Coke can from Mr. Crosslin. Detective Tarkington took the mask to the flower shop, where Wayne Branch, Mary Branch, and James Flynn identified the mask. In cross-examination, Detective Tarkington testified that the defendant gave consent for a search of his apartment. The detective did not request that the Coke can or BB pistol be examined for fingerprints.

James Flynn, delivery driver for the Friendly Flower Shop, testified that a man came into the store wearing a mask and tried to rob them. The man had on a Halloween mask which covered his whole head. He also carried a pistol, which looked like a black .45 or .9mm. The man pointed the pistol at Mr. Flynn and asked him for some money. When Mr. Flynn replied he did not have any money, the man again demanded, "Give me all your [G–

D–] money." Mr. Flynn again told him that he had no money, believing it was a joke. The man then told Mary Branch that he wanted her money. She did not give him any money either, so the man turned to Wayne Branch and told Branch to give him all the money. When Mr. Branch refused, the man waited a second and left through the front door. Mr. Flynn stated that he followed the man outside and saw the man go left around the building's corner. Mr. Branch got into his van. Mr. Flynn went around the side of the building and saw the man running down the street, which was on the other side of the building. The man's mask was off. Once the man got past the railroad tracks, Mr. Flynn did not see the man again.

Mary Branch testified that she saw a man running through the front door of the flower shop wearing a mask over his face. He was wearing a long-sleeved green sweat shirt and blue jeans. The man had a gun in his hand. Mrs. Branch stated that the man pointed the gun at James Flynn, then at her, and demanded money. She told the man that she did not have any money and asked him, "[W]hat in the hell are you doing in here." Then the man turned to her husband, Wayne Branch, and demanded money, but her husband did not give him any money either. The man ran from the shop, followed by her husband and James Flynn. Mrs. Branch called the police. Several days later, the police showed Mrs. Branch a mask and gun, which she was able to identify. In cross-examination, Mrs. Branch testified that she did not take the man seriously at first but then realized he was serious.

Samantha Bly, manager for the Rio Vista Apartments, testified that the apartment complex contained about two hundred fifty (250) apartments. She stated that about four hundred fifty (450) people occupied approximately two hundred twenty (220) apartments.

Marvin Powell, Chief Investigator for the Davidson County Public Defender's Office, testified that he interviewed Wayne Branch on three occasions. Mr. Branch had advised Mr. Powell that he could not recall the color of the suspect's clothing. As to Mrs. Branch, Mr. Powell testified that she stated the suspect was wearing a dark colored T-shirt and blue jeans at the time of the offense. Mr. Powell stated that he talked to James Flynn, who said the suspect was wearing blue jeans and a white T-shirt. Also, James Flynn told Mr. Powell that he saw the suspect running down Bridgeway from the shop.

The defendant elected not to testify.

### SUFFICIENCY OF EVIDENCE

The defendant asserts that the evidence was insufficient to convict him of attempted aggravated robbery. More specifically, the defendant submits that Wayne Branch's identification of him as the person who got out of the car is insufficient to establish the

4

defendant as the perpetrator of the attempted aggravated robbery. Naturally, the State contends otherwise.

Following a jury conviction, the initial presumption of innocence is removed from the defendant and exchanged for one of guilt, so that on appeal, the defendant had the burden of demonstrating the insufficiency of the evidence. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982). It is the duty of this Court to affirm the conviction unless the evidence adduced at trial was so deficient that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 317, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes,* 875 S.W.2d 253, 259 (Tenn. 1994); Tenn R. App. P. 13(e). In *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App.), *perm. app. denied* (Tenn. 1990), this Court held this rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct evidence and circumstantial evidence.

We do not reweigh or reevaluate the evidence, nor may we replace our inferences for those drawn by the trier of fact. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978). Furthermore, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris,* 839 S.W.2d 54, 75 (Tenn. 1992), *cert. denied,* 507 U.S. 954, 113 S. Ct. 1368 (1993). A jury verdict accredits the testimony of the State's witnesses and resolves all conflicts in favor of the State's theory. *State v. Williams,* 657 S.W.2d 405, 410 (Tenn. 1983).

The proof at trial established that the defendant entered the Friendly Flower Shop wearing a Halloween mask and had a gun which turned out to be a Daisy BB pellet gun. The masked man asked all three store occupants for money, which they denied having. The victims, at first, believed the man was perpetrating a joke, but they soon realized that the defendant was serious. Upon leaving the shop, the owner, Wayne Branch, followed the defendant, who was riding in a car driven by Kimberly Roberts. Branch observed the defendant get out of the car, but he was not wearing a green sweatshirt as when the defendant was in the shop. The victim recognized the defendant as an employee of several businesses, which were located in the vicinity. The victim had made several purchases from the defendant.

In arresting Kimberly Roberts, the police discovered that she was wearing a green shirt and a search of the trunk revealed a Daisy BB pistol. The police recovered a Halloween mask and Coke can from some bushes located between two apartment buildings across from the defendant's apartment. The three victims identified the mask and pistol as used by the defendant in the robbery attempt. In cross-examination, the jury

was apprized of any discrepancies in the clothing descriptions given by the State's witnesses at the time of the offense. However, the jury resolved these conflicts in favor of the State. Accordingly, we find that the evidence is more than sufficient to support the conviction of the defendant for attempted aggravated robbery. This issue is without merit.

The trial court's judgment is affirmed.


_____
L. T. LAFFERTY, SENIOR JUDGE


CONCUR:


_____
THOMAS T. WOODALL, JUDGE


_____
DAVID H. WELLES, JUDGE